IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GREGORY CARR | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:18-CV-03109-N |
| | § | |
| PHIL BARNETT, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

This Order addresses Plaintiff Gregory Carr's motion for summary judgment [25]. For the reasons below, the Court grants summary judgment to Carr on his claims for sale of an unregistered security under both the Securities Act of 1933 and the Texas Securities Act against Defendants Barnett Energy Development LLC ("BED") and Barnett Energy #21 (Gafford-Turner) (the "Partnership").

### I. ORIGINS OF THE MOTION

This dispute arises from Plaintiff Gregory Carr's purchase of a general partnership interest in an oil well operation. After meeting Carr at a networking event, Defendant Bethe Strickland-Matherne probed Carr's interest in an investment opportunity. Strickland-Matherne then introduced Carr to Barnett, the president and principal of BED. Pl.'s App. 44 [27]. BED is the managing general partner of the Partnership, a general partnership formed to own working interest in a particular oil and gas well. *Id.* at 16. Carr met with Barnett and Strickland-Matherne to discuss Carr's potential investment in the Partnership. Decl. of Gregory Carr ¶ 7 [27]. Ultimately, after the meeting and later

ORDER – PAGE 1

conversations with Barnett and Strickland-Matherne, Carr executed an agreement to purchase a general partnership interest and delivered to Barnett a check for $99,378.00 payable to the Partnership. Decl. of Gregory Carr ¶ 11; Pl.'s App. 123–25.

Shortly after Carr came aboard, he began having second thoughts due to a lack of communication about the status of the oil well from Barnett. Decl. of Gregory Carr ¶¶ 17–18. When various conversations with Barnett, Strickland-Matherne, and Barnett's lawyer failed to reassure Carr, he asked for rescission of the agreement and the return of the money he paid in consideration for the partnership interest. *Id.* ¶¶ 17–23. But Carr did not get his money back. *See id.* ¶¶ 29. Carr then filed this lawsuit against Barnett, BED, the Partnership, and Strickland-Matherne bringing claims for violations of the Securities Act of 1933 (the "Securities Act") and the Texas Securities Act ("TSA") along with various common law claims. Pl.'s Compl. 17–29 [1].

The Court previously stayed this case pending resolution of a Chapter 7 bankruptcy petition filed by Barnett. Order, Dec. 11, 2019 [16]. In an adversary proceeding between Carr and Barnett, the bankruptcy court entered an agreed judgment against Barnett. Pl.'s App. 143–44. The Court then reopened this case following Barnett's discharge from the bankruptcy, and Carr resumed the case against the other defendants. *See* Order, June 28, 2021 [19].

Carr now moves for summary judgment on his claims for sale of an unregistered security under both federal and state law. Defendants did not respond to the motion. After the filing of the motion, Carr and Strickland-Matherne stipulated to dismissal of all claims against Strickland-Matherne with prejudice. *See* Stipulation of Dismissal [33].

ORDER – PAGE 2

Accordingly, the Court proceeds to address the motion as to Carr's claims against BED and the Partnership.

## II. LEGAL STANDARD FOR SUMMARY JUDGMENT

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, "he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to summary judgment either by (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) arguing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322–25.

Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact so that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

586–87 (1986). Moreover, "[c]onclusory allegations, speculation, and unsubstantiated assertions" will not suffice to satisfy the nonmovant's burden. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1). Factual controversies are resolved in favor of the nonmoving party "only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Hous.*, 185 F.3d 521, 525 (5th Cir. 1999) (quoting *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

### III. THE COURT GRANTS SUMMARY JUDGMENT TO CARR ON HIS CLAIM FOR SALE OF AN UNREGISTERED SECURITY IN VIOLATION OF THE SECURITIES ACT

Carr argues that he is entitled to summary judgment on his claim based on the sale of an unregistered security in violation of the Securities Act of 1933 and, further, that BED and the Partnership are jointly and severally liable. As explained below, the Court agrees and grants summary judgment to Carr on his claim for sale of an unregistered security under the Securities Act.

"The Securities Act of 1933 imposes strict liability on offerors and sellers of unregistered securities." *Swenson v. Engelstad*, 626 F.2d 421, 424 (5th Cir. 1980) (citing *Hill York Corp. v. Am. Int'l Franchises, Inc.*, 448 F.2d 680, 686 (5th Cir. 1971), *abrogated on other grounds by Pinter v. Dahl*, 486 U.S. 622 (1988)). Specifically, section 5 of the Securities Act provides that unless "a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly . . . to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to

sell such security . . . ." 15 U.S.C. § 77e(a).  Section 12 of the Securities Act creates civil liability for sellers violating section 5:

> Any person who . . . offers or sells a security in violation of section 77e of this title . . . shall be liable . . . to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security.

15 U.S.C. § 77l(a).  To make a prima facie case for the unlawful sale of an unregistered security, a plaintiff must show three elements: "(1) the sale [of] or offer to sell securities; (2) the absence of a registration statement covering the securities; and (3) the use of the mails or facilities of interstate commerce in connection with the sale or offer." *Engelstad*, 626 F.2d at 425 (citing *Doran v. Petroleum Mgmt. Corp.*, 545 F.2d 893, 899 (5th Cir. 1977)).  As explained below, Carr has established a prima facie case against BED and the Partnership.

### A.  The Partnership Interest Was an Unregistered Security Sold Using Means of Interstate Commerce

Undisputed facts disclose the sale of an unregistered security using means of interstate commerce.  It is undisputed that Carr delivered a $99,378.00 check to Barnett in exchange for the partnership interest.  Decl. of Gregory Carr ¶¶ 8, 11 (Carr's description of the sale).  For the reasons below, that exchange constituted sale of an unregistered security in interstate commerce in violation of the Securities Act.

**1. The Partnership Interest Was a Security.** – First, as explained below, undisputed facts show the partnership interest was a security because it was an investment contract governed by the Securities Act.

ORDER – PAGE 5

A partnership interest may be a security as an "investment contract," one of the more variable categories of instruments falling within the scope of federal securities laws. *Youmans v. Simon*, 791 F.2d 341, 345 (5th Cir. 1986); 15 U.S.C. § 77b(a)(1) (defining "security"). Under the test set out by the Supreme Court in *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946), "an investment contract qualifies as a security if it meets three requirements: '(1) an investment of money; (2) in a common enterprise; and (3) on an expectation of profits to be derived solely from the efforts of [others].'" *SEC v. Arcturus Corp.*, 928 F.3d 400, 409 (5th Cir. 2019) (quoting *Williamson v. Tucker*, 645 F.2d 404, 417–18 (5th Cir. 1981)). There is no serious dispute here that Carr's purchase of the partnership interest described above satisfied the first two requirements (investment of money in a common enterprise). The Court must now decide whether Carr has shown the partnership interest met the third requirement.

When determining whether investors expect to rely "solely on the efforts of others," courts apply the term "solely" flexibly so that a party cannot evade liability merely by "parceling [out] minor duties to investors." *Id.* (quoting *Youmans*, 791 F.2d at 345–46). Instead, the test is a practical one focusing on "whether investors, in fact, can and do utilize their powers" rather than "theoretical control." *Id.* (citing *Affco Invs. 2001, LLC v. Proskauer Rose, L.L.P.*, 625 F.3d 185, 190 (5th Cir. 2010)).

Due to the power typically retained and exercised by partners in a general partnership, there is a strong presumption that a general partnership interest does not qualify as a security. *Id.*; *Youmans*, 791 F.2d at 346. But sometimes general partners lack managerial powers, and a general partnership interest qualifies as a security where the

ORDER – PAGE 6

investor can show that "in spite of the partnership form which the investment took, he was so dependent on the promotor or on a third party that he was in fact unable to exercise meaningful partnership powers." *Williamson*, 645 F.2d at 424. To meet this burden, the investor can show any one of the following factors:

> (1) an agreement among the parties leaves so little power in the hands of the partner . . . that the arrangement in fact distributes power as would a limited partnership; or (2) the partner . . . is so inexperienced and unknowledgeable in business affairs that he is incapable of intelligently exercising his partnership or venture powers; or (3) the partner . . . is so dependent on some unique entrepreneurial or managerial ability of the promotor or manager that he cannot replace the manager of the enterprise or otherwise exercise meaningful partnership . . . powers.

*Id.* These factors are not exhaustive, and "other factors could also give rise to such a dependence on the promoter or manager that the exercise of partnership powers would be effectively precluded." *Arcturus Corp.*, 928 F.3d at 411 (internal quotation marks omitted).

Carr argues that he has met his burden by establishing the first *Williamson* factor. In analyzing the first factor, courts look to (1) the legal documents setting up the arrangement to see if investors were given formal powers; and (2) how the arrangement functioned in practice. *Id.* The Court agrees that Carr has produced sufficient evidence to establish the first *Williamson* factor.

Carr points to express terms in the legal documents indicating that he did not retain or exercise significant control over the enterprise, and the evidence of the arrangement in practice supports that conclusion. The Private Placement Memorandum ("PPM") disclosing information about the investment states that BED, as the managing general partner of Barnett Energy #21, "will exclusively manage and control all aspects of the

ORDER – PAGE 7

business of the partnership and will make all decisions concerning the business of the partnership." Pl.'s App. 16. The PPM also expressly disclaims any ability of the investor to make business decisions, stating that the investor "will not be permitted to take part in the management or in the decision making of the partnership." *Id.* Similarly, the Form of General Partnership Agreement attached to the PPM states that BED "shall conduct, direct, and exercise full and exclusive control over all activities of the Partnership" and that "Investor Partners shall have no power over the conduct of the affairs of the Partnership." *Id.* at 85.

Those statements in the transaction documents are consistent with the available evidence regarding the subsequent functioning of the arrangement. There is little evidence in the record regarding the parties' practices during the short period between Carr's investment and request for rescission. However, according to Carr's sworn declaration, his inability to obtain basic updates regarding the operations of the Partnership led him to request rescission within two months of his investment. *See* Decl. of Gregory Carr ¶¶ 17–19. Considering Carr's declaration along with the plain language of the governing documents, the Court holds Carr has met his burden to establish the first *Williamson* factor. Because the partnership interest met all three requirements for an investment contract security, the Court holds that Carr's partnership interest investment was a security.

**2. The Security Was Not Covered by a Registration Statement.** – Second, Carr has produced unrebutted evidence sufficient to show that the security was not covered by a registration statement. First, the PPM states that the "sale of the units will not be registered under the Securities Act of 1933" and that no "information describing the units has been

ORDER – PAGE 8

filed with, submitted, approved, or reviewed by the United States Securities and Exchange Commission . . . , or any state securities commission or similar regulatory agency." Pl.'s App. 17, 23. Additionally, Carr provides a declaration of an attorney stating that the search terms "Barnett Energy" and "Barnett Energy #21" in the SEC's EDGAR database returned no relevant results indicating registration of the security with the SEC (along with printouts of the search results).[1] *See id.* at 168–83. This unrebutted evidence is sufficient to meet Carr's burden to show that the partnership interest was not covered by a registration statement.

### 3. Defendants Used Means of Interstate Commerce in Connection with the Sale.

– Third, Carr has met his burden to show that the sale involved the use of instruments of communication in interstate commerce.

The Securities Act prohibits the use of any means or instruments of communication in interstate commerce or of the mails to sell unregistered securities. It is "beyond debate" that the "Internet and email are facilities or means of interstate commerce." *Bunnell v. Netsch*, 2013 WL 2494987, at *7 (N.D. Tex. 2013) (quoting *United States v. Barlow*, 568 F.3d 215, 220 (5th Cir. 2009) (discussing federal jurisdiction under section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78a, *et seq.*, which depends on the use of any means or instrumentality of interstate commerce or of the mails, including even purely intrastate use of the telephone or mails)).

---

[1] EDGAR (Electronic Data Gathering, Analysis, and Retrieval) is a database containing millions of company and individual securities filings and is "the primary system for companies and others submitting documents" to the SEC under various federal securities laws. *About EDGAR*, U.S. SEC. AND EXCH. COMM'N, https://www.sec.gov/edgar/about.

ORDER – PAGE 9

Carr produced evidence that Barnett and Strickland-Matherne each sent emails to Carr in order to secure Carr's investment. Decl. of Gregory Carr ¶¶ 6, 8–9; Pl.'s App. 12–15. Carr and Barnett exchanged the executed agreement over email. Decl. of Gregory Carr ¶¶ 14–16; Pl.'s App. 126. Carr also stated that he "discussed the proposed investment with Barnett, and at other times Strickland-Matherne, by e-mail [and] telephone." Decl. of Gregory Carr ¶ 9. Accordingly, Carr has met his burden to show that Barnett and Strickland-Matherne, acting on behalf of BED and the Partnership, each used instrumentalities of interstate commerce in connection with the offer and sale. The Court must now address whether BED and the Partnership are properly considered statutory sellers subject to liability for the sale under the Securities Act.

### B. BED and the Partnership Are Statutory Sellers

Carr argues that BED and the Partnership are both liable because they are "statutory sellers" for purposes of the Securities Act. For the reasons below, the Court agrees.

Section 12 of the Securities Act states that any "person who . . . sells" securities in violation of section 5 is subject to liability. There is no doubt that section 12(1) "imposes liability on the owner who passed title, or other interest in the security, to the buyer for value." *Pinter v. Dahl*, 486 U.S. 622, 642 (1988). However, liability is not limited to the person who actually passes title of the security to the buyer. *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 870–71 (5th Cir. 2003) (citing *Pinter*, 486 U.S. 622). Instead, any "person who successfully solicits the purchase, motivated at least in part by a desire to serve his own financial interests or those of the securities owner" is also a seller. *Pinter*, 486 U.S. at 647. A person solicits a potential investor by attempting "to produce the sale by urging

ORDER – PAGE 10

or persuading another to act." *Meadows v. SEC*, 119 F.3d 1219, 1225 (5th Cir. 1997). By contrast, liability does not extend to the gratuitous solicitor or to "collateral participants." *Rosenzweig*, 332 F.3d at 871 (quoting *Pinter*, 486 U.S. at 650).

The Court determines that BED and the Partnership are statutory sellers. The PPM states that BED, the managing general partner, offered and sold the partnership interest on behalf of the Partnership in exchange for a check payable to the Partnership. Pl.'s App. 23, 32. Barnett, the president of BED, met directly with Carr and actively worked to solicit his investment and induce action on behalf of BED and the Partnership. Thus, both defendants were more than collateral participants. Instead, each stood to benefit financially from Carr's investment and the enterprise's ultimate performance. Carr has met his burden to show that BED and the Partnership are statutory sellers. For all the reasons above, Carr has established a prima facie case for liability under section 12(a)(1) against BED and the Partnership.

### C. BED and the Partnership Are Jointly and Severally Liable for the Consideration Paid Plus Pre-Judgment Interest

For section 12 violations, the Securities Act provides for a remedy of money damages based on a "calculation result[ing] in what is the substantial equivalent of rescission." *Pinter*, 486 U.S. at 641 n.18. Specifically, the plaintiff can recover "the consideration paid for [the] security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security." 15 U.S.C. § 77l(a).

Defendants, each of whom is independently liable as a seller, are jointly and severally liable to Carr for the consideration he paid plus pre-judgment interest. Carr's unrefuted declaration states that he did not receive any distributions or benefit of any kind through his ownership of the security. Decl. of Gregory Carr ¶ 26. Further, it is undisputed that Carr did not receive a certificate or title document and, thus, he effectively tendered the security by demanding rescission and repayment of the purchase price. *Id.* ¶¶ 19–23, 27; Pl.'s App. 131–35. Carr is therefore entitled to a judgment against BED and the Partnership in the amount of $99,378 plus pre-judgment interest.

### IV. THE COURT GRANTS SUMMARY JUDGMENT TO CARR ON HIS CLAIM FOR SALE OF AN UNREGISTERED SECURITY IN VIOLATION OF TSA

Carr also moves for summary judgment on his claim seeking rescission under TSA based on the sale of an unregistered security. For the reasons below, the Court grants the motion for summary judgment as to this claim, and Carr is entitled to rescission of the sale under TSA.

Under Texas law, a "dealer or agent may not sell or offer for sale any securities . . . unless the commissioner has issued a permit qualifying securities for sale for those securities to the issuer of the securities or a registered dealer." TEX. GOV'T CODE ANN. § 4003.001. A plaintiff may sue a person who offers or sells a security in violation of the registration requirements for rescission of the sale. *Id.* § 4008.051. A plaintiff entitled to rescission may "recover the consideration . . . paid for the security plus interest on the consideration at the legal rate from the date the buyer made the payment, less the amount of any income the buyer received on the security." *Id.* § 4008.056(a).

### A.  The Partnership Interest Was a Security Under TSA

The definition of "security" under TSA also includes investment contracts, and the Texas Supreme Court has adopted a version of the *Howey* test to determine when investment contracts are securities under TSA.  *See Life Partners, Inc. v. Arnold*, 464 S.W.3d 660, 670 (Tex. 2015) (noting the Texas Supreme Court adopted the *Howey* test as restated in *United Housing Foundation Inc. v. Forman*, 421 U.S. 837, 840 (1975) and applying the "*Howey*/*Forman*" test to determine whether a transaction constitutes an investment contract).  Texas courts look for an "investment in a common venture premised on a reasonable expectation of profits to be derived from the *entrepreneurial or managerial efforts of others*."  *Id.* (quoting *Forman*, 421 U.S. at 852) (emphasis in original).  Following federal securities law and other courts, the focus remains on the "economic realities" of the transaction.  *Id.* at 670–71.

When evaluating whether an investment was made with an expectation of profits from the efforts of others, Texas courts ask whether the efforts made by others are "those essential managerial efforts which affect the failure or success of the enterprise."  *Id.* at 673 (quoting *Searsy v. Com. Trading Corp.*, 560 S.W.2d 637, 638 (Tex. 1977)).  Thus, to qualify as an investment contract security, "the transaction must be such that, in reality, the seller, or another party other than the purchaser, exercises the predominant managerial or entrepreneurial control on which the purchaser's anticipation of profits is based."  *Id.* at 674–75.

Having determined above that the partnership interest was an investment contract qualifying as a security under the *Howey* test and federal securities law, the Court holds it

ORDER – PAGE 13

was a security under TSA as well.  Application of the test outlined in *Arnold* leads to the same conclusion because the PPM explicitly reserved all meaningful managerial control of the Partnership to BED and excluded Carr from control of the enterprise.  Therefore, the partnership interest was an investment contract and a security under TSA.

### B.  *The Partnership Interest Was Not Permitted for Sale in Texas*

Carr has offered sufficient unrebutted evidence that the Texas Securities Commissioner did not issue a permit qualifying the security for sale in Texas.  With the motion, Carr attached a signed certificate from the Securities Commissioner of the State of Texas indicating that state records from August 1, 2013 to present do not disclose: (1) the filing of various notice forms and notices listing Barnett Energy #21 (Gafford-Turner) as the name of the offering or the issuer; or (2) that any securities issued by Barnett Energy #21 (Gafford-Turner) have been registered or permitted for sale in Texas.  Pl.'s App. at 184–86.  This is sufficient to meet Carr's burden on summary judgment to establish that the partnership interest was not permitted for sale in Texas.

### C.  *Barnett, BED, and the Partnership Are Subject to TSA's Restrictions on Sales of Unregistered Securities*

TSA extends liability to any "dealer or agent" that sells unregistered securities.  The statute broadly defines "dealer" to include:

> (1) a person or company, other than an agent, who for all or part of the person's or company's time engages in [Texas], directly or through an agent, in selling, offering for sale or delivery, soliciting subscriptions to or orders for, undertaking to dispose of, or inviting offers for any security; and
>
> (2) a person or company who deals in any other manner in any security in [Texas].

ORDER – PAGE 14

TEX. GOV'T CODE ANN. § 4001.056(a). An issuer of a security who offers for sale, sells, or makes sales of its own securities is deemed a dealer unless the issuer sells to or through a registered dealer acting as fiscal agent for the issuer. *Id.* § 4001.056(b)–(c).

Further, an agent means "a person or company employed, appointed, or authorized by a dealer to sell, offer for sale or delivery, solicit subscriptions to or orders for, or deal in any other manner in, securities in [Texas]." *Id.* § 4001.052(a). However, an officer of a corporation or partner of a partnership is not deemed an agent solely because of their status as an officer or partner of an entity if that entity is registered as a dealer. *Id.* § 4001.052(b).

BED, through Barnett, directly offered the security for sale on behalf of the issuer (the Partnership). But BED and Barnett were not registered dealers acting as the Partnership's fiscal agent. Thus, the Partnership was a dealer under TSA and BED, selling on the dealer's behalf, was an agent. Because BED and the Partnership were each a "dealer" or "agent" under TSA, they were subject to the statute's restrictions on sales of unregistered securities.

### D. BED and the Partnership Are Sellers Under TSA

Carr argues that Barnett, BED, and the Partnership are sellers under TSA. The Court agrees. The meaning of the phrase "person who offers or sells" under TSA is intended to have the same meaning as the phrase from the Securities Act. *See Marshall v. Quinn-L Equities, Inc.*, 704 F. Supp. 1384, 1391 (N.D. Tex. 1988).[2] Having determined that each

---

[2] In *Marshall*, the district court noted that for "purposes of Section[] 33A(1)" of TSA, "the phrase 'person who offers or sells' is taken from Section 12 of the 1933 Securities Act and is intended to have the same meaning." 704 F. Supp. at 1391. Section 33(A)(1) of TSA established liability of sellers for violations of registration and permit requirements — such

ORDER – PAGE 15

of these defendants is a statutory seller under the Securities Act, the Court holds that Barnett, BED, and the Partnership are also sellers under TSA.

In sum, Carr has established that he is entitled to summary judgment against BED and the Partnership on his claim under TSA for the sale securities not permitted for sale in Texas. As explained in the above analysis regarding the Securities Act, Carr has produced unrebutted evidence that he tendered the security and did not receive any income on the security. Accordingly, BED and the Partnership are jointly and severally liable to Carr for the consideration he paid (the purchase price of $99,378.00) plus pre-judgment interest.

## Conclusion

The Court determines Carr has advanced sufficient evidence to meet his burden on summary judgment on his claim for sale of an unregistered security in violation of the Securities Act of 1933 against BED and the Partnership. Further, Carr has met his burden as to his claim for sale of an unregistered security under the Texas Securities Act against BED and the Partnership. The Court therefore grants Carr's motion for summary judgment as to those claims against BED and the Partnership.

Several issues in this case remain unresolved. First, this Order does not address Carr's requested relief regarding costs, attorneys' fees, or the setting of an interest rate for the calculation of interest. Second, Carr's claims against Barnett remain pending before

---

liability is now codified in section 4003.001 of the Texas Government Code. *Compare* Tex. Rev. Civ. Stat. Ann. art. 581-33A(1), *with* Tex. Gov't Code Ann. § 4008.051. As the recodification was not intended to make substantive changes to the governing law, the phrase "person who offers or sells" is still the equivalent of the same phrase in the Securities Act.

ORDER – PAGE 16

the Court. Finally, the following claims from Carr's complaint remain pending before the Court in their entirety: liability of controlling persons under the Securities Act of 1933 (Count II); failure to register as a dealer or agent under the Texas Securities Act (Count IV); fraud under the Texas Securities Act (Count V); liability of control persons under the Texas Securities Act (Count VI); fraudulent inducement (Count VII); breach of contract (Count VIII); breach of fiduciary duty (Count IX); aiding and abetting breach of fiduciary duty (Count X); and accounting (Count XI).

Signed May 18, 2022.

David C. Godbey
United States District Judge